By the Court, Cowen, J.
If the proof of agency in Áverill and Judson was defective when the note was read, the defendants’ proof supplied the defect. The company took possession of the property for which this note, with others, was given; thus ratifying the transaction with Moss and Knapp. (Story on Agency, 239, § 244.) Moreover, the judgment by default against the defendants upon another note given for the same consideration with that in question, at least tended to fortify the other evidence of *140 ratification, if it was not of itself conclusive. The sum of the defence is, that the defendants purchased an expensive apparatus. for smelting and washing lead ore, a branch of business for the carrying on of which they were incorporated. The bulk of the property, it is not denied, was immediately useful for that purpose; consisting of lands, buildings, machinery, utensils &c. Among other things, some controverted questions, apparently involving important interests, were compromised by the transaction. Moss and Knapp had, as proprietors and operators, fitted out the establishment according to their own views, attaching to it some trifling articles, which, in the abstract, might not come within the corporate powers of the defendants. However, it seems' the vendors were not willing to except any thing, and the defendants took the whole. We must, if necessary, intend that this was so, on the presumption that they would not wilfully transgress their powers. It might, therefore, be inferred that they purchased the extra land, if any, the school house, threshing machine «fee. as the sine qua non to a bargain which, on the whole, was valuable and pertinent to their business. Such a thing they had a right to do. Besides, I am not aware that a corporation, more than another, may purchase and convert an article to its own use, and then object that it acted beyond the statute power. It is itself a sort of agent, and must be the judge as between itself and the vendor whether the article be wanted or rot. The vendor cannot pronounce upon the question. A school-house or threshing machine may be useful, though it be conceded that the corporation have no power to keep school, hire a schoolmaster, or embark in the employments of agriculture. The materials of either may have been desirable for improving the legitimate apparatus. Being on the spot, it might have been thought prudent to take them to pieces and devote their parts to lawful repairs. The purpose is a secret between the company and the hands that transact their business; and as against the vendors, who have not been told that the purchase was an idle one, the company must be estopped. If they really abuse their power in making purchases of that sort, the people have a remedy by *141 information in nature of a quo warranto. The vendor knows not, nor can he conjecture, that his vendees are engaged in violating the policy of the country. He is innocent; the vendees alone are guilty. Suppose a corporation to pinchase land beyond the value allowed by its charter, the remedy would be to proceed against the land as a mortmain ; not to throw the loss upon the imiocent grantor. Purchasing a shop for the purpose of keeping goods and carrying on trade is objected to. But is the loss to fall on the grantors of the shop, or the vendors of the goods ? The goods to be purchased, for aught Moss and Knapp knew, might be wanted by the workmen of the company in payment for labor, and be even more acceptable than cash. Indeed, we know that, in practice, corporations for manufacturing purposes sometimes establish regular shops of trade, with the primary view of exchanging goods for labor. Workmen are accommodated in this ivay, and a profit is made on the goods. Are the vendors of such companies, from whom they purchase at wholesale, to be told that some of the goods were got for objects of" general speculation, that the consideration was pro tanto illegal, and that in an action for the price it must be reduced accordingly ? Some of the property bought of Moss and Knapp, it is admitted, went to pay the debts of the defendants, having been sold by the receiver under an order from chancery. Yet this very property is among the things which they object to pay for, on the ground that in fact it was not necessary for the operations of the mining business. How could Moss & Knapp know that? They had thought the same property material as a part of the apparatus while in their own hands, and used it in the business for which the company was incorporated. Where the vendors are apprised that a company are acting in fraud of their charter, and knowingly sell for the purpose of effecting the fraud, a different question arises. But tenements being taken in lease, or goods purchased, though even for a criminal object, such as carrying on smuggling, or for the purposes of prostitution, this being a secret with the lessee or vendee, forms no defence against an action for the rent or price by the persons from whom the lease was taken or the goods obtained. If articles bought by *142 a corporation cannot possibly be of any use in the line of corporate business, but the purchase is necessarily an excess of power, a question might be raised on that ground. Yet in dealing with corporations created for manufacturing" purposes, who that does not make a part of them shall be holden to penetrate the ramifications of their business so far as to fix the boundary of possible utility ? Such a company as the defendants’ must have lands, houses and wood, as well as mines, machinery and utensils. They may resort to all the ordinary means of paying Avorkmen, and providing them and their families Avith residences; and who would deny in this country of schools that they may pay by providing school-houses and schoolmasters for the children of workmen ? Education in certain branches is better than cash. Even the threshing machine, the purchase of Avhich Avas thought by counsel to be such a scandalous excess, might have been quite useful in preparing and furnishing grain for workmen and their families, Avho might prefer this as an article of payment. It Avould moreover thresh the grain for teams employed in marketing the lead. Is it quite clear that lands to a reasonable extent and Avithin the limits of the company’s capital may not be cultivated and crops raised by them as another means for paying the expenses of their business ? But above all, I repeat, shall those by Avhom the company are furnished Avith articles of doubtful utility be made responsible for the excess? I think not. This company Avere authorized by statute to exercise a general agency, to Avhich a large discretion Avas necessarily mcident. The exigencies of their business and condition of their affairs were known to themselves only. Acts done by such a company Avhich bear an equivocal appearance because they may be within or Avithout the-corporate power or the capital employed, must be tested by such rales as we apply to the acts of a general agent. The man who deals with such an agent is not bomid to know that the transaction is Avithin the scope of his authority. If it may be so, the principal cannot repudiate, unless he can show that the person with Avhom his agent dealt was privy to the fact of the excess. Nothing of this kind was shown at the trial of the cáse before us. Nor have I been able, from *143 the evidence, to say that the circuit judge spoke too strongly when he declared the whole consideration of the note to be good and legal. Looking to the act of incorporation, (Sess. Laws of 1837, p. 441,) and the statute to which it refers, (1 R. S. 602, 2d ed.,) and confining the defendants to powers expressly granted, it is impossible to say that they have been necessarily exceeded in any particular.
The judge did not say that the record of the former suit was conclusive, It seems to have been received as persuasive evidence that the defendants had acquiesced in the purchase. This, with the evidence of the defendants themselves, was abundant to take away the effect of the exception that Averill & Judson’s authority was not proved. A subsequent ratification is equivalent to an original power. (Story On Agency, 239, § 244.) The confirmation of a part of the transaction was an affirmance of the whole. (Story On Agency, 245, § 250.)
Bronson, J. dissented.
New trial denied.